## Scott v. Ironton Lumber Company.

(Decided May 27, 1924.)

### Appeal from Boyd Circuit Court.

1. Master and Servant—Evidence Held Not to Require Submission of Question of Negligence in Operation of Gasoline Engine on Tramway.—In action by one injured while attempting to board trucks hauling logs on tramway, evidence held not to require submission of the question of negligence of operator of gasoline engine in starting engine.

2. Master and Servant—Helper on Tramway Held Negligent.—One assisting in hauling logs on a tramway was not free from negligence, where he went between engine and car at time he knew engineer was trying to start motor without notifying engineer.

W. D. O'NEAL and R. S. DINKLE for appellant.

MARTIN & SMITH for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

J. R. Scott sued the Ironton Lumber Company for personal injuries. At the completion of plaintiff's evidence the court gave a peremptory instruction to find a verdict for the defendant and Scott appeals.

In the fall of 1919, the Ironton Lumber Company was removing some logs on trucks running on a tram-

way and drawn by a gasoline engine. The employes consisted of the operator of the engine and J. R. Scott, who accompanied him on the trips to open gates and otherwise assist.

The tramway was three feet in width. The engine was a small affair with a seat on the side, upon which the operator sat and from which he could see either in front or to the rear. The other equipment consisted of four pairs of wheels. Each of these consisted of two wheels joined by an axle and called a truck. A truck was placed near the front end and another near the rear end of a log and in this way the logs made a connecting body between the two trucks, forming a car.

At the time of the injury there were two of these cars, upon each of which several logs 36 feet in length had been rolled, the two cars being connected by a timber coupling. The front end of the first car was connected to the engine by a 4x4 scantling, some ten or twelve feet in length. The engine was unable to pull the load up a steep incline and Scott "chocked" the wheels of the rear car and uncoupled it from the train. Thereupon the engineer ran the engine and front car to the top of the hill and returned for the rear car. As to what occurred then Scott testifies, "I coupled the engine on and he was doing something with his clutch, looking down into the engine and kept fooling with it, could not get it to hold or something, and we fooled there five or ten minutes, so directly he nodded to me to take the chock out from under the truck and I got the chock out and went up front to get on the front end of the truck and one end of the log stuck out about four or five feet, . . . I went around to step on the coupling pole. . . . As I went to step my foot, my left foot upon it, his clutch caught hold; I suppose he threw it into gear; it made a jump and made me lose my step and before I could get out this log here knocked me down and I caught this coupling pole and I got this foot in the clear. The wheel caught my leg here and it drug me 55 feet."

To these matters he testified on cross-examination:

"Q. He stopped there when he came back where you had the rear truck chocked? A. Yes, he stopped and as I said he was doing something with the clutch.

"Q. What was he doing with the clutch? A. I couldn't see what he was trying to do with it; I think he was trying it and couldn't move it.

"Q. He didn't move the engine when you took the chock out? A. No, sir, he nodded for me to take the chock out and I went up front to get on—

"Q. Where were you at the time he gave you a signal—nodded to you? A. I was at the rear end of the truck.

"Q. And started forward? A. I went forward and walked around to the front end of the truck where I was to sit on that log. I tried to get on the log where it was coupled and just as I done that the engine made a jump and jerked me and these two logs here grabbed me and knocked me down and this foot was in the clear. I held on, and it hit me and this leg here was caught under the wheel.

"Q. You ride the rear end of these trucks don't you? A. No, I didn't at that time; sometimes they would when they would be on a steep place with it, with the engine, and whichever way you would have to open the gates.

"Q. I believe you and the other men would get on at the rear end and ride? A. I may have got on the rear end when it was running, that is when they were on a steep hill.

"Q. Don't you know of your own knowledge that they rode the rear end always? A. I don't think I did; I have seen them getting on there on a steep hill, riding there Always had two men on there, one on the front end maybe, and the other on the rear end.

"Q. You were the only man on there this time? A. Yes, sir.

"Q. You went to get on the front end? A. Went to get on there at the time.

"Q. Anything said? A. I don't recollect anything said."

There is nothing in the evidence indicating that the engineer saw Scott's peril or knew of his endeavor to mount the car of logs. Sometimes the assistant rode at one end of the logs, sometimes at the other. When the car was running he got on at the rear end, and there was no reason for the engineer to anticipate that Scott at this time, would get on the front end, as he gave no notice of his intention to do so.

The engine was giving trouble, as is frequently the case with gasoline engines, and naturally the attention of the engineer was directed to it, and the sudden catching of the gear was not unusual. Scott knew of this and under the circumstances we do not see that the engineer failed in any duty he owed Scott.

On the other hand Scott was not free from negligence in going between the engine and car at a time he knew the engineer was trying to start the motor, especially in so doing without notifying the engineer of his intentions.

Wherefore the judgment is affirmed.